**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **4:09CR00306 SWW** |
| | ) | |
| **JOSE FRANCISCO VILLA-MADRIGAL** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

## DISPOSITION

On July 26, 2009, Arkansas State Police Trooper Chris Goodman observed Defendant driving a pick up truck east on Interstate 40 near mile marker 80. According to Goodman, a reasonable and prudent driver should allow approximately one car length per every 10 miles per hour between his car and the vehicle he is following in order to comply with state law. Using this "rule of thumb" and considering the existing rainy conditions, Goodman was reasonable in believing Defendant was not allowing enough space between the pick up truck he was driving and the tractor trailer he was following. Goodman, therefore, initiated a traffic stop. A video camera in Goodman's car recorded this incident and the video was introduced into evidence and viewed by the court during the hearing on March 2, 2011. (Government's Exhibit No. 1)

After Defendant and Goodman pulled their vehicles over on the shoulder of the road, Goodman exited his vehicle and approached the passenger side of the truck Defendant was driving. Goodman's first comment to Defendant was to the effect that "you need to give that big truck more

room." Goodman asked for Defendant's driver's license which Defendant did not have, but he did produce a "Mexican Identity Card." Goodman has seen a number of different types of legitimate and illegitimate Mexican identification cards, but had not seen one like Defendant produced. Goodman believed that it appeared to be "fake." Goodman contacted a state police radio dispatcher for the purpose of determining whether there were any outstanding warrants or tickets for the name on the identification card. There were no outstanding tickets or warrants.

Defendant was not the registered owner of the vehicle and he was unable to give a complete name for the owner. Defendant was hesitant in responding to the simple question of where he was traveling from and, when he finally described visiting an uncle in Oklahoma for approximately a week, he was unable to provide a phone number that could be used to contact the uncle for confirmation. Goodman acknowledged that individuals stopped by police officers often exhibit some nervousness, but he described Defendant as exhibiting more than the normal amount of nervousness that is associated with a traffic stop. While conversing with Defendant, Goodman observed other factors which in his training and experience suggest a heightened possibility of drug trafficking activity; namely there only being one key on the key ring in the ignition and the presence of a small religious statue on the center console next to the Defendant. Goodman also found Defendant's statement that he had been staying with his uncle for a week and was traveling across country inconsistent with the fact that Defendant only had a very small amount of clothing with him.

Due to the increasing amount of rain falling, Goodman asked Defendant to follow him to a location under a nearby bridge overpass and Defendant complied with this request. Goodman, who is somewhat conversant in Spanish, continued his questioning of defendant once they reached the location under the bridge. The Court notes that Defendant has some ability to understand English,

as he demonstrated when he backed up his vehicle pursuant to instructions given by Goodman in English. Goodman asked Defendant in Spanish for permission to search his pick up truck and Defendant agreed.

During his search of the vehicle, Goodman discovered the existence of a hidden compartment located behind the glove compartment. Goodman was unable to gain entry to the hidden compartment through either the dashboard or the front right wheel well. Goodman decided to use a drill to determine the nature of the contraband, if any, that was hidden in the compartment. He drilled into the area where the hidden compartment was located and the drill bit revealed the existence of what Goodman reasonably suspected to be cocaine. Defendant was arrested and the pick up truck was taken to a local police garage where further inspection discovered seven kilograms of cocaine in the hidden compartment.

Defendant seeks suppression of the contraband and statements he subsequently gave, after being given his *Miranda* rights[1], arguing that Goodman's initial stop was without probable cause and was, in fact, a pretext to search for possible narcotics. Recently, the Court of Appeals for the Eighth Circuit had occasion to reaffirm the basic principles which must be taken into account when resolving a motion to suppress arising out of a challenged traffic stop.

> This Court has held numerous times that " *any* traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." *United States v. Jones,* 275 F.3d 673, 680 (8th Cir.2001) (emphasis original); *see also United States v. Pereira-Munoz,* 59 F.3d 788, 791 (8th Cir.1995); *United States v. Bloomfield,* 40 F.3d 910, 915 (8th Cir.1994). Here, the arresting officer believed he saw two traffic violations before initiating the stop: 1) violation of state law prohibiting stopping in the traveled portion of the roadway under Iowa Code §

---

[1]Defendant does not make an independent claim about the circumstances surrounding the actual giving of his statement. Rather, he argues the statement should be suppressed as the tainted fruit of the challenged traffic stop.

321.354; and 2) violation of a city ordinance prohibiting double parking under Des Moines, Iowa, Mun.Code, ch. 114, art. VIII, § 114-358(a)(9). The government concedes that Coleman was not guilty of the first alleged traffic violation because of a statutory exception for business and residential areas. See Iowa Code § 321.354.

Regardless of the validity of a stop based on Iowa Code § 321.354, we agree with the district court that the stop was lawful because of the officer's observation of a traffic violation for double parking. *See* Des Moines, Iowa, Mun.Code, ch. 114, art. VIII, § 114-358(a)(9) (prohibiting stopping or parking a vehicle "on the roadway side of any vehicle stopped or parked at the edge or curb of a street"). The record indicates that the vehicle in which Coleman was a passenger violated this ordinance. Nevertheless, Coleman argues that the government failed to introduce evidence to establish a prima facie violation of the double parking ordinance because the testifying officer never specifically testified that Coleman's vehicle was in fact stopped or parked *next* to any other parked vehicle. However, the officer testified that stopping in the middle of the street next to a vehicle already stopped on the curbside violates the city's double parking ordinance and that Coleman's vehicle was in fact stopped in the middle of a street with parked cars on both sides, blocking traffic from a nearby intersection. Although a minor infraction, the officer described his observation of a traffic violation. The stop was thereby lawful because the violation gave the officers probable cause to effectuate a traffic stop on the vehicle. *See Jones,* 275 F.3d at 680.

Moreover, a vehicle stop is lawful based upon reasonable suspicion of criminal activity. *See United States v. Mora-Higuera,* 269 F.3d 905, 909 (8th Cir.2001) ("an investigative stop of a vehicle does not violate the Fourth Amendment if the police have reasonable suspicion that the vehicle or its occupants are involved in criminal activity.") (citation omitted); *Terry v. Ohio,* 392 U.S. 1, 25-31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A stop based on reasonable suspicion must be supported by specific and articulable facts. *United States v. Hughes,* 517 F.3d 1013, 1016 (8th Cir.2008). In determining whether an officer had a "particularized and objective basis for suspecting legal wrongdoing," reviewing courts must look at the totality of the circumstances, allowing officers to draw on their experience and training. *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). "Factors consistent with innocent travel, when taken together, can give rise to reasonable suspicion, even though some travelers exhibiting those factors will be innocent." *United States v. Carpenter,* 462 F.3d 981, 986 (8th Cir.2006). Although reasonable suspicion must be more than a "hunch," the Fourth Amendment only requires an officer to articulate "some, minimal objective justification for an investigatory stop." *United States v. Fuse,* 391 F.3d 924, 929 (8th Cir.2004).

*U.S. v. Coleman,* 603 F.3d 496, 499 -500 (8th Cir. 2010).

Applying the reasoning of *Coleman* to the facts of this case, Goodman acted reasonably in

initiating the traffic stop. Goodman observed Defendant violating state traffic laws by following too closely behind the tractor trailer. Once he lawfully stopped and engaged Defendant in conversation, Goodman further observed an individual acting with a degree of nervousness which exceeded the average traffic stop and learned that Defendant did not possess a driver's license, was not the owner of the vehicle and could not satisfactorily identify the owner, possessed a Mexican identification card which appeared to be a "fake," and was unable to simply explain where he "was coming from." In light of all these facts, it was reasonable for Goodman to ask for permission to conduct the search of the vehicle that led to the discovery of the contraband and later to the giving of a statement. Defendant's motion to suppress should be denied.

IT IS SO ORDERED this  3   day of March, 2011.

_____
UNITED STATES MAGISTRATE JUDGE